IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ILLINOIS DEPARTMENT OF TRANSPORTATION,**<br><br>    Plaintiff,<br><br>v.<br><br>**UNION PACIFIC RAILROAD COMPANY, BOB WYATT, and UNKNOWN OWNERS AND NONRECORD CLAIMANTS,**<br><br>    Defendants. | Case No. 3:24-CV-00614-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This is a condemnation action in which the Illinois Department of Transportation ("IDOT") seeks to exercise its eminent domain authority to obtain permanent and temporary easements over certain property owned by Union Pacific Railroad Company ("Union Pacific").[1] The question before the Court is whether it has jurisdiction to hear the case.

### BACKGROUND

IDOT is an agency of the State of Illinois whose mandate includes the construction, maintenance, and operation of highways in the state. IDOT Compl. for Condemnation (Doc. 1-1 at 2). IDOT is currently engaged in an improvement project of Illinois Route 37 through Jefferson County, which includes "patching, milling, resurfacing, installing

---

[1] IDOT invokes its eminent domain authority under the Illinois Highway Code (605 ILCS 5/4-501) and the Illinois Eminent Domain Act (735 ILCS 30/5-5-5).

eight-foot-wide asphalt shoulders, grading of slopes and ditches, and the installation of replacement culverts" on and around the highway. *Id.* at 3. This project requires IDOT to acquire a permanent easement over a certain parcel of land (Parcel 9013516PE) and a temporary easement not to exceed four years over second parcel (Parcel 9013516TE). *Id.* at 3-4. Union Pacific is the record owner of these parcels, and it opposes IDOT's planned condemnation of the land in question.

After several years of administrative proceedings before the Illinois Commerce Commission, IDOT filed this action in the Circuit Court of the Second Judicial Circuit, Jefferson County, Illinois on January 8, 2024. Union Pacific removed the action to this Court on February 29, 2024, arguing that IDOT's claims are completely preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), Pub. L. No. 104– 88, 109 Stat. 803 (codified in scattered sections of 11, 45, and 49 U.S.C. (2000)).[2] (Doc. 1). On March 7, 2024, Union Pacific filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that IDOT failed to state a claim for relief because its planned condemnation was preempted by the ICCTA. (Doc. 8). IDOT opposed Union Pacific's motion to dismiss (Doc. 11) and filed a motion to remand the case to state court pursuant to 28 U.S.C. § 1447(c). (Doc. 17).

IDOT's motion to remand contests this Court's subject matter jurisdiction. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *State of Ill. v. City of Chicago*, 137 F.3d

---

[2] The timeliness of IDOT's notice of removal is not contested.

474, 478 (7th Cir. 1998). For that reason, IDOT's motion to remand will be prioritized over Union Pacific's motion to dismiss.

## LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed" to federal court. 28 U.S.C. § 1441(a). The removing party bears the burden of demonstrating "the basic elements of federal subject matter jurisdiction—diversity or a federal question." *U.S. for Use of Owens-Corning Fiberglass Corp. v. Brandt Const. Co.*, 826 F.2d 643, 645 (7th Cir. 1987). Union Pacific invokes the second of these jurisdictional gateways—federal question jurisdiction based on complete preemption.

Federal question jurisdiction is governed by the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The complaint is the key to identifying a federal question because the jurisdictional inquiry ordinarily does not extend beyond it. *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005). And if the complaint does not raise a federal claim, "a federal defense to a state cause of action typically will not suffice" to create removal jurisdiction. *Smart v. Local 702 Int'l Brotherhood of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009). This limiting principle applies "even if the defense relies on 'the pre-emptive effect of a federal statute.'" *Id.* (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)).

*Complete* preemption is an important exception to this rule. *Smart*, 562 F.3d at 803. It "exists where Congress has so completely preempted a particular area that no room

remains for any state regulation and the complaint would be necessarily federal in character." *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 787 (7th Cir. 2002) (internal quotation marks omitted). Complete preemption "describes the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to extend the jurisdiction of the federal courts to such cases." *Smart*, 562 F.3d at 803 (internal quotation marks omitted). Incidentally, "complete" preemption has little to do with "ordinary" preemption because it is a jurisdictional doctrine that permits removal based on federal question jurisdiction, as opposed to merely providing an affirmative defense. *See Sarauer v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 669 n.1 (7th Cir. 2020) (collecting cases and explaining distinction between "complete" and "ordinary" preemption); *Pollitt v. Health Care Srvs. Corp.*, 558 F.3d 615, 616 (7th Cir. 2009) ("'Complete preemption' is not a defense; instead it represents a conclusion that all claims on the topic arise under federal law, so that 28 U.S.C. § 1441 permits removal.").

The Seventh Circuit applies a two-step framework to analyze complete preemption claims: At step 1, courts must determine "whether the state claim is displaced by federal law under an ordinary preemption analysis." *Smart*, 562 F.3d at 804 (internal quotation marks omitted). If it is, courts proceed to step 2 to determine "whether Congress created a federal cause of action to take the place of the state action." *Id.* If either of these requirements is not met, the case must be remanded. *See Sarauer*, 966 F.3d at 668 ("A motion to remand must be granted if the case removed from state court could not have been brought in federal court originally for lack of subject-matter jurisdiction.").

## DISCUSSION

IDOT's motion to remand does not require this Court to decide whether IDOT may ultimately proceed with its planned condemnation. Nor is it the Court's responsibility at this time to determine whether the condemnation is defeated on the merits by the affirmative defense of ordinary preemption. The question presented is instead rather narrow: will these questions be decided in state or federal court? The Court will thus examine whether IDOT's condemnation claim is completely preempted by the ICCTA. If it is, the case stays here. If it is not, remand will be mandatory.

1. <u>Step 1 – Ordinary Preemption</u>

Congress enacted the ICCTA in 1995 and created the Surface Transportation Board ("STB" or "Board") to administer it. *Union Pacific R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678, 682 (7th Cir. 2011) ("*CTA*"). The statute contains the following express preemption provision:

> The jurisdiction of the Board over--
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). ICCTA preemption is "broad and sweeping," and the Seventh Circuit has held that it can extend to state and municipal exercises of condemnation authority. *CTA*, 647 F.3d at 678, 682. In *CTA*, the Chicago Transit Authority sought to condemn a piece of railroad property that Union Pacific owned, even though it had already been using the property under a lease agreement with Union Pacific. *Id.* at 676-77. Union Pacific sought to enjoin the condemnation on the basis that it was preempted by the ICCTA. *Id.* at 677. The Seventh Circuit employed an "as-applied" preemption framework to determine whether the planned condemnation "would have the effect of preventing or unreasonably interfering with railroad transportation," and thus be preempted. *Id.* at 679 (internal quotation marks omitted). The CTA argued that its proposed condemnation did not unreasonably interfere with railroad transportation because it merely sought to make the terms of its existing lease permanent by way of a perpetual easement over the property in question. *Id.* at 681. The Seventh Circuit disagreed and held that although the proposed condemnation may not have changed the status quo, the CTA's use of the property prevented Union Pacific from using it for railroad purposes in the future and required the use of non-standard inspection and maintenance procedures. *Id.* at 681. And because "the degree of interference that the particular action has on railroad transportation" was sufficiently significant, the taking was preempted. *Id.* at 679, 683.

Other courts have also recognized the ICCTA's preemptive force with respect to state law claims that interfere with a railroad's operation or use of its land. *See e.g.*, *Norfolk South. R. Co. v. Dille Road Recycling, LLC*, 94 F.4th 517, 530 (6th Cir. 2024) (non-exclusive

easement claim preempted because it excluded railroad from its property); *Skidmore v. Norfolk South. R. Co.*, 1 F.4th 206, 215-16 (4th Cir. 2021) (quiet title claims preempted because they sought to exclude railroad from its property and govern maintenance of tracks); *Wedemeyer v. CSX Transportation, Inc.*, 850 F.3d 889, 897 (7th Cir. 2017) (similar); *Elam v. Kansas City South. R. Co.*, 635 F.3d 796, 807 (5th Cir. 2011) (negligence per se claim completely preempted because it "directly attempt[ed] to manage or govern a railroad's decisions in the economic realm"); *Wisconsin Centr. Ltd. v. City of Marshfield* 160 F. Supp. 2d 1009, 1012-15 (W.D. Wis. 2000) (state condemnation action preempted). The theme that binds many of these cases together is the degree of interference that a successful state law claim would have on railroad operations—the more disruptive a claim is to a railroad's operations, the more likely it is to be preempted. *Wedemeyer*, 850 F.3d at 897.

Here, IDOT seeks to condemn two parcels of land that belong to Union Pacific. These parcels run parallel to Union Pacific's railroad tracks, and IDOT maintains that its planned condemnation would have little to no effect on current railroad operations. Not. of Removal (Doc. 1 at 7); IDOT Mot. to Remand (Doc. 18 at 71-72, 108). IDOT, moreover, has claimed—and Union Pacific does not dispute—that Union Pacific has no current plans to utilize the land for its own operations, although it may do so in the future. Not. of Removal (Doc. 1 at 8-9). *See CTA*, 647 F.3d at 681 (condemnation claim preempted even though railroad had no current plans to use property). The Court acknowledges the possibility that IDOT's plan could exclude Union Pacific from its property or at least limit its ability to utilize it for railroad operations. If that is the case, IDOT's claim may be ordinarily preempted. The Court will thus assume, without deciding, that the first step

of the complete preemption analysis—ordinary preemption—is met here.[3]

  2. <u>Substitute Federal Cause of Action – Step 2</u>

"The sine qua non of complete preemption is a pre-existing *federal* cause of action that can be brought in district courts." *Smart*, 562 F.3d at 806 (quoting *Lontz v. Tharp*, 413 F.3d 435, 442-43 (4th Cir. 2005) (emphasis in original)). Although the replacing federal cause of action need not be identical in scope and remedy to the displaced state claim, there must be some thematic relationship between the two. *Griffioen v. Cedar Rapids & Iowa City R. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015); *Fayard v. Northeast Vehicle Srvs., LLC*, 533 F.3d 42, 47 (1st Cir. 2008); *cf. Smart*, 562 F.3d at 808. As the Seventh Circuit explained in *Rogers*:

> [T]he ability to bring suit under federal law is an element of complete preemption. Logically, complete preemption would not be appropriate if a federal remedy did not exist in the alternative. Otherwise, a plaintiff would be forced into federal court with no relief available for vindicating the same interest.

308 F.3d at 788 (cleaned up). Whether a federal cause of action "vindicate[es] the same interest" as a displaced claim under state law is not always an easy question to answer.[4]

---

[3] It is not necessary to decide whether the planned condemnation is ordinarily preempted because Union Pacific's jurisdictional argument fails at step 2 of the complete preemption analysis. Moreover, ordinary preemption may be relevant in the proceedings to come. It is thus prudent to allow the Circuit Court of Jefferson County to address the issue on remand. *See Hughes v. United Airlines, Inc.*, 634 F.3d 391, 395 (7th Cir. 2011) (deferring consideration of ordinary preemption so that state court could address it on remand).

[4] The First Circuit explained the issue under the ICCTA as follows:
> [E]ven where a federal statute can completely preempt some state law claims, the question remains *which* claims are so preempted. No one supposes that a railroad sued under state law for unpaid bills by a supplier of diesel fuel or ticket forms can remove the case based on complete preemption simply because the railroad is subject to the ICCTA. For complete preemption, the critical question is whether federal law provides an exclusive substitute federal cause of action that a federal court (or possibly a federal agency) can employ for the kind of claim or wrong at issue. *Fayard*, 533 F.3d at 47 (first emphasis in original).

Neither the parties, nor this Court, have identified binding authority from the Seventh Circuit that resolves this question under the ICCTA. Other Circuits have offered somewhat inconsistent interpretations of this issue. In *Skidmore*, the plaintiff sued a railroad company in state court for adverse possession and a prescriptive easement over a piece of land on which she lived, but which the railroad had in fact acquired in 1903. 1 F.4th at 209. The railroad removed the case to federal court asserting complete preemption as a basis for federal subject matter jurisdiction. *Id.* The Fourth Circuit observed that under 49 U.S.C § 11704(b), "[a] rail carrier . . . is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part," and that "[a] person may file a complaint with the Board under section 11701(b) of this title or bring a civil action under subsection (b) of this section to enforce liability against a rail carrier . . . under this part." *Id.* § 11704(c). The court held that these provisions of the ICCTA "create[] a cause of action that plaintiffs can pursue directly in federal court," and that the plaintiff's claims were thus completely preempted. *Id.* at 216; *accord Elam*, 635 F.3d at 809; *Pejepscot Indus. Park v Maine Cent. R. Co.*, 215 F.3d 195, 201-202 (1st Cir. 2000). That the ICCTA made no adverse possession or prescriptive easement remedy available to the plaintiff was of no consequence in *Skidmore*, because, notwithstanding the lack of analogous remedies, "the [ICCTA] nevertheless affords plaintiffs a federal cause of action" that supports complete preemption. *Skidmore*, 1 F.4th at 217.

The Eighth Circuit appears to have taken a narrower view of section 11704(b)-(c). In *Griffioen*, the plaintiffs sued several railroad companies and other defendants in state

court asserting negligence and strict liability claims arising out of property damage they sustained in a flood. 785 F.3d at 1185. The defendants removed the case to federal court based on complete preemption under the ICCTA. *Id.* at 1185-86. The court acknowledged that section 10501(b) "may be powerful enough to suggest that Congress intended that the ICCTA completely preempt certain state law claims." *Id.* at 1189. But it was the nature of the displaced state claim that mattered to the jurisdictional inquiry because "it is unlikely that Congress would have intended the ICCTA to allow removal of claims of a kind entirely outside the scope of the statute's causes of action." *Id.* at 1090. The court analyzed section 11704 under this framework and held that it did not completely preempt the plaintiffs' claims because it only permitted causes of action for "violation[s] of this part." *Id.* at 1191 (quoting 49 U.S.C. § 11704(b)). Thus, there was a substantive mismatch between the plaintiffs' claims and a cause of action under section 11704, which the court explained as follows:

> The primary focus of the ICCTA's substantive provisions is regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers. . . The Griffioen Group's allegations that the Rail Group's bridge maintenance and related conduct resulted in flooding of real property in Cedar Rapids does not fall within the scope of this substantive framework.

*Id.* at 1191. And for that reason, the court concluded that section 11704 could not support the complete preemption of the plaintiffs' claims. *Id.* at 1192.

*Griffioen*'s approach is instructive here. Like the defendants in *Skidmore* and *Griffioen*, Union Pacific invokes 49 U.S.C. § 11704(b)-(c) as a federal cause of action that displaces IDOT's condemnation claim. Again, section 11704(b) imposes liability on rail

carriers "for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." Section 11704(c) in turn provides a cause of action "to enforce liability against a rail carrier . . . under this part." But nothing in IDOT's complaint suggests that Union Pacific committed an "act or omission" "under this part." Nowhere does IDOT allege that Union Pacific violated the ICCTA, whose "primary focus" is "regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers." *Griffioen*, 785 F.3d at 1191. Indeed, IDOT does not seek to hold Union Pacific liable for *anything* it did or failed to do. It is thus unclear how section 11704(b) has any relevance to IDOT's uniquely sovereign condemnation claim over a piece of private property. It is true that the absence of an identical condemnation remedy under the ICCTA is not enough to defeat complete preemption, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968), but the lack of any thematic relationship between IDOT's condemnation claim and a cause of action under section 11704(b)-(c) refutes the contention that the two "vindicat[e] the same interest." *Rogers*, 308 F.3d at 788.

Union Pacific also cites the ICCTA's abandonment process under 49 U.S.C. § 10903 as a qualifying federal cause of action that supports step 2 of the complete preemption analysis. Under that section, "[a] rail carrier . . . who intends to--(A) abandon any part of its railroad lines; or (B) discontinue the operation of all rail transportation over any part of its railroad lines, must file an application relating thereto with the Board." *Id.* § 10903(a)(1). Once the railroad has submitted an application and complied with the notice and publication requirements outlined in section 10903(a)(3), it may abandon its

railroad lines or discontinue operation "only if the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." *Id.* § 10903(d). The decision whether to permit abandonment or discontinuance rests with the Board whose decision is subject to a "highly deferential" standard of review in federal court. *City of South Bend, Indiana v. Surface Transp. Bd.*, 566 F.3d 1166, 1169 (D.C. Cir. 2009). Union Pacific contends that "[t]his cause of action allows parties to seek STB approval to remove rail property from the agency's exclusive jurisdiction, subjecting it to state law." Union Pacific Resp. to Mot. to Remand (Doc. 25 at 18-19).

The Court respectfully disagrees with Union Pacific's interpretation of the abandonment process. First, a plain reading of the statute appears to foreclose Union Pacific's argument out of the gate. Section 10903(a)(1) permits "rail carrier[s]," not third parties like IDOT, to apply for abandonment. The statute appears devoid of any textual support for Union Pacific's argument that IDOT can apply to the Board for abandonment relief. In *City of South Bend*, the D.C. Circuit addressed a third party's abandonment application on the merits without analyzing the standing issue separately. 566 F.3d at 1169-71. But in a concurring opinion, then-Judge Kavanaugh questioned "the premise of the Court's opinion . . . that the relevant statute permits third parties . . . to file adverse abandonment petitions." *Id.* at 1171 (Kavanaugh, J., concurring). The concurrence observed that "the [ICCTA] . . . may allow only a railroad that owns the tracks-not a third party-to seek abandonment of a rail line." *Id.* at 1171-72. The Court agrees with this interpretation of the ICCTA. Without a statutory basis to bring a claim for abandonment, it is doubtful that this mechanism is capable of vindicating the same interest that IDOT

seeks to vindicate through its condemnation action. *See Griffioen*, 785 F.3d at 1191 ("[I]t is unlikely that Congress would intend to completely preempt state-law causes of action without providing a federal cause of action designed to vindicate similar rights and interests or to redress wrongs of a similar type.").

Second, Seventh Circuit precedent appears to foreclose Union Pacific's argument. *Smart*, 562 F.3d at 806. In *Smart*, the court considered whether a plaintiff's state law antitrust claim was completely preempted by sections 7 and 8 the National Labor Relations Act[5] ("NLRA") as interpreted in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). *Smart*, 562 F.3d at 804-06. Although the court found that the plaintiff's claim was *ordinarily* preempted under *Garmon*, complete preemption did not apply because the National Labor Relations Board ("NLRB"), not the courts, was vested with primary jurisdiction over disputes within the scope of sections 7 and 8.[6] *Id.* at 806. And because the NLRB had primary jurisdiction over these types of disputes, "*Garmon* preemption alone cannot provide a basis for federal jurisdiction over [the plaintiff's] alleged state-law claims." *Id.* at 806.

Here, the Board enjoys "primary jurisdiction" over claims arising under the ICCTA's substantive provisions. *Elam*, 635 F.3d at 809-10 (collecting cases). The

---

[5] 29 U.S.C. §§ 157, 158.

[6] The doctrine of primary jurisdiction has nothing to do with federal subject matter jurisdiction. *Holland v. Delray Connecting R. Co.*, 311 F. Supp. 2d 744, 747 (N.D. Ind. 2004). Rather, it seeks to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63 (1956). Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* at 64.

abandonment scheme is no exception because it mandates the submission of an application to the Board, and then directs the Board to make a final determination as to the propriety of abandonment. 49 U.S.C. §§ 10903(a), (d). And the statute expressly warns that abandonment "may be carried out *only as authorized under this chapter.*" *Id.* § 10903(a)(1). Union Pacific itself directs IDOT to the Board, and not this Court, for the relief it seeks: "IDOT is free to make [its] argument [for condemnation] to the STB." Union Pacific Resp. to Mot. to Remand (Doc. 25 at 21). So, with primary jurisdiction over abandonment petitions vested in the Board, Union Pacific's argument appears to conflict with *Smart*, which held that an administrative agency's primary jurisdiction over a claim undermines step 2 of the complete preemption analysis. 562 F.3d at 806.[7] With this understanding of *Smart*, the Court is unable to conclude that abandonment under section 10903 displaces IDOT's condemnation claim.

The Court thus concludes that the ICCTA does not contain a cause of action that "vindicate[es] the same interest" at issue here. And without such a cause of action available to IDOT, step 2 of the complete preemption analysis is not satisfied.

---

[7] Union Pacific cites the Seventh Circuit's decision in *Hughes v. United Airlines, Inc.*, 634 F.3d 391, 395 (7th Cir. 2011), for the proposition that "complete preemption does not depend on the ability of the federal courts to supply a remedy." From this proposition, Union Pacific argues that "IDOT cannot avoid complete preemption by pointing to the STB's role in resolving adverse-abandonment claims." Union Pacific Resp. to Mot. to Remand (Doc. 25 at 21). But *Hughes*' observation that "complete preemption does not depend on the ability of the federal courts to supply a remedy" merely expresses the well-known principle that the nature of the remedy available in federal court is irrelevant to the jurisdictional analysis. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561 (1968). It is also notable that even though *Hughes* and *Smart* dealt with questions of complete preemption under federal labor law, *Hughes* does not mention *Smart* at all, nor does it call *Smart*'s holdings into question. *Hughes*, 634 F.3d at 395; *Smart*, 562 F.3d at 806. The Court is thus required to apply *Smart* as it found it.

## CONCLUSION

For these reasons, the Court lacks subject matter jurisdiction over this case. IDOT's Motion to Remand (Doc. 17) is **GRANTED**. The action is **REMANDED** to the Circuit Court of the Second Judicial Circuit, Jefferson County, Illinois. Union Pacific's Motion to Dismiss (Doc. 8) is **DENIED** without prejudice as moot.

**IT IS SO ORDERED.**

DATED:  December 6, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**